HELMER • FRIEDMAN, LLP
GREGORY D. HELMER, ESQ. – STATE BAR NO. 150184
GHELMER@HELMERFRIEDMAN.COM
ANDREW H. FRIEDMAN, ESQ. – STATE BAR NO. 153166
AFRIEDMAN@HELMERFRIEDMAN.COM
723 OCEAN FRONT WALK
VENICE, CALIFORNIA 90291
TEL.: 310.396.7714 - FAX: 310.396.9215

ATTORNEYS FOR PLAINTIFFS KENNETH
JOHN LODGE, JUDSON LERTZMAN, BARBARA
GALARO AND MICHAEL HOPKINS
AND THE PROPOSED CLASSES

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| KENNETH JOHN LODGE, JUDSON LERTZMAN, BARBARA GALARO AND MICHAEL HOPKINS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. REMODELERS, INC., a corporation, U.S. HOME SYSTEMS, INC., a corporation, and DOES 1 through 75, inclusive,<br>Defendants. | CASE NO.:CV07-05409 CAS (AJWx)<br><br>*[Honorable Judge Christina A. Snyder]*<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF: (1) ATTORNEYS' FEES AND COSTS; AND (2) CLASS REPRESENTATIVE ENHANCEMENTS**<br><br>**DATE: NOVEMBER 30, 2009**<br>**TIME: 10:00 A.M.**<br>**JUDGE: THE HON. CHRISTINA A. SNYDER**<br>**COURTROOM: 5** |

# TABLE OF CONTENTS

I.     INTRODUCTION.................................................................1

II.    FACTUAL AND PROCEDURAL HISTORY.............................2

    A.    Plaintiffs and Their Counsel Conducted Extensive
          Investigation And Legal and Factual Analysis Before
          Filing The Litigation.................................................2

    B.    Plaintiffs Tried to Settle Their Claims At The Beginning
          Of The Litigation, Before Incurring Significant Attorneys'
          Fees and Costs.......................................................3

    C.    After Defendants Refused To Discuss An Early Settlement,
          the Parties Actively Litigated the Case and Engaged in
          Substantial Discovery and Law and Motion Practice....................4

    D.    The Parties Engaged In Serious, Informed, and Arm's
          Length Settlement Negotiations............................................5

    E.    The Claims Administration Process...........................................5

III.   THE COURT SHOULD APPROVE THE REQUESTED
     ATTORNEYS' FEES .................................................................6

    A.    The Requested Fees Are Reasonable Because They Are *Less*
          Than Class Counsel's Hourly Lodestar...................................9

        1.    The Total Number Of Hours Worked Is Reasonable............9

        2.    The Hourly Rates Claimed Are Reasonable....................10

    B.    The Requested Fees Are Reasonable Because They Are
          Significantly Less Than Class Counsel's Hourly Lodestar
          Plus Multiplier.......................................................11

        1.    The Time And Labor Involved In Litigation This
             Case Was Extensive And Meant That Class Counsel
             Was Precluded From Other Employment.......................11

\\\
\\\
\\\

2.  The Issues In This Case Were Novel And Meant That Class Counsel Took A Significant Risks In Litigation It Because They Were Doing So On A Contingency…..........12

3.  The Experience, Reputation, And Ability Of Class Counsel Militate In Favor Of A Multiplier…………………...12

C.  The Requested Fees Are Reasonable Given The Substantial Benefits Conferred On The Class………………………12

D.  The Reaction Of The Plaintiffs And The Class Supports The Fees Request.............................................................................14

E.  The Requested Attorneys' Fees Will Not Reduce Any Class Member's Recovery…………………................................15

IV.  **THE COURT SHOULD APPROVE THE REQUESTED COSTS**...…15

V.  **THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE PAYMENTS**……………………………………………16

1.  The Class Representatives Faced Risk (Financial and Otherwise) In Commencing Suit…..........................................17

2.  The Class Representatives Faced Personal Difficulties and Spent Significant Time and Effort Over The Course Of More Than Two Years As A Result Of This Litigation…………...........................................................17

3.  The Class Representatives Will Not Receive Much Personal Benefit As A Result Of The Litigation……………..18

VI.  **CONCLUSION**……………………………………………………19

# <u>TABLE OF AUTHORITIES</u>

## <u>CASE AUTHORITIES</u>

<u>Chalmers v. City of Los Angeles</u>, 796 F.2d 1205 (9th Cir. 1986)...………………10

<u>Cudle v. Bristow Optical Co.</u>, 224 F.3d 1014 (9th Cir. 2000)………………………8

<u>Ferland v. Conrad Credit Corp.</u>, 244 F.3d 1145 (9th Cir. 2001)…………………8

<u>Fischel v. Equitable Life Assusr. Soc'y</u>, 307 F.3d 997 (9th Cir. 2002)……………..6

<u>Friend v. Kolodzieckzak</u>, 72 F.3d 1386 (9th Cir. 1995)……………………………8

<u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011 (9th Cir. 1998)…………………………7

<u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983)…………………………………………13

<u>In re Immune Response Securities Litigation</u>, 497 F.Supp.2d
    1166 (S.D. Cal. 2007)………………………………………..…...13, 14

<u>In re Mego Fin. Corp. Sec. Litig.</u>, 213 F.3d 454 (9th Cir. 2000)…………………15

<u>In re Omnivision Technologies, Inc.</u>, 559 F.Supp.2d
    1036 (N.D. Cal. 2008)………………………………………………13, 14

<u>In re Prudential Ins. Co.</u>, 148 F.3d 283 (3rd Cir. 1998)……………………………11

<u>In re Rite Aid Corp. Sec. Litig.</u>, 396 F.3d 294 (3rd Cir. 2005)……………………14

<u>In re Washington Pub. Power Supply Sys. Sec. Litig.</u>,
    19 F.3d 1291 (9th Cir. 1994)………………………………………...6, 7, 8

<u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67 (9th Cir. 1975)……………………8

<u>Lobatz v. Us. West Cellular of Calif, Inc.</u>, 222 F3d 1142 (9th Cir. 2000)………...15

\\\
\\\

Moreno v. City of Sacramento, 534 F.3d 1106 (9th Cir. 2008)…..………………..7

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478
        U.S. 546 (1986)……………………………………………………...7

Rawlings v. Prudential-Bache Properties, Inc., 9 F.3d 513
        (6th Cir. 1993)………………………………………..…………...7

Six (6) Mexican Workers v. Arizona Citrus Growers, 904
        F.2d 1301 (9th Cir. 1990)……………………………….……..7

Staton v. Boeing Co., 327 F.3d 938 (9th Cir. 2003)………………………….16

Van Vranken v. Atlantic Richfield Co., 901 F. Supp.
        294 (N.D. Cal. 1995)…………………………………..…………..8, 16

Vincent v. Hughes Air West, 557 F.2d 759 (9th Cir. 1977)………………………15

Vizcaino v. Microsoft Corp., 290 F.3d 1043 (9th Cir. 2002)………………….6

Wright v. Linkus Enterprises, Inc., --- F.R.D. ----,
        2009 WL 2365436 (E.D. Cal. 2009)……………………………....16

Zucker v. Occidental Petroleum Corp., 192 F.3d 1323 (9th Cir. 1999)…………..15

**STATUTORY AND REGULATORY AU7THORITIES**

CA Business & Professions Code § 17200……………………………………..3

FRCP Rule 23(a) ……………………………………………………………..5

FRCP Rule 30(b)(1)……………………………………………………………4

**OTHER AUTHORITIES**

4 A. Conte & H. Newberg, *Newberg On Class Actions* § 14:5
        (4th ed. 2002)……………………………………………………6, 8, 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

D. Herr, *Annotated Manual for Complex Litigation* § 14.122, p. 254-55
    (4th ed.2008)……………………………………………………………….7, 8, 10

D. Herr, *Annotated Manual for Complex Litigation* § 14.122, p. 256
    (4th ed.2008)……………………………………………………………...........8

Manual for Complex Litig. § 21.62 n. 971 (4th ed. 2004)………………………...16

Memorandum In Support Of Motion For Approval Of Attorneys' Fees, Costs & Enhancements

# I.    __INTRODUCTION.__

Counsel for Named Plaintiffs/Class Representatives Kenneth John Lodge, Judson Lertzman, Barbara Galaro and Michael Hopkins ("Plaintiffs" or "Class Representatives") and the proposed class ("Class Counsel"), have negotiated and secured a settlement of $1,500,000.00 to resolve various wage claims against Defendants U.S. Remodelers/U.S. Home Systems, Inc. ("Defendants").  [See Stipulation and Settlement Agreement attached to the Declaration of Andrew H. Friedman ("Friedman Decl.") as Exh. "A"].  As permitted under the Stipulation and Settlement Agreement and pursuant to the Court's preliminary approval of that Agreement, see ECF Document # 138, Plaintiffs now moves for approval of: (1) attorneys' fees in the amount of $720,287.14 (such amount represents a substantial reduction below the more than $1 Million in hourly loadstar fees incurred thus far by Class Counsel); and (2) costs in the amount of $29,712.86.  Plaintiffs also move for Class Representative Enhancements in the amount of $20,000.00 each for Kenneth John Lodge and Judson Lertzman and $2,500.00 each for Barbara Galaro and Michael Hopkins.

Class Counsel skillfully litigated heavily contested legal claims to obtain a favorable settlement for the class, which the class has now approved – not a single class member objected to or opted out of the settlement. See Declaration of Alejandra Zarate, ¶ 12, p. 4, line 3 to ¶ 14, p. 4, line 6.  In light of the significant amount of attorney time necessarily expended to achieve that success and the fact that California law expressly provides for attorneys' fees in wage claims, the requested attorneys' fee award is fair and reasonable.  See Friedman Decl., ¶ 14, p. 5, lines 5 to 13.   First, Class Counsel achieved an exceptional result and generated a significant benefit for the class, despite the substantial risks faced with regard to both certification and the merits of the claims.  See Friedman Decl., ¶ 52, p. 21, line 5 to ¶ 56, p. 24, line 28.  Second, Class Counsel incurred substantial financial risk, litigating on an entirely contingency fee basis.  See Friedman Decl., ¶ 57, p.

1

25, lines 3 to 8.  Class Counsel not only had to hire additional attorneys to work on the litigation but also had to forgo other work in order to prosecute this case. Id. Moreover, although Class Counsel reasonably expected to recover, at a minimum, their hourly loadstar fees when they undertook the litigation, they will be recovering significantly less than their loadstar.  Id.  Fourth, fairness of the award is supported by the amount and high quality of the work performed by Class Counsel and the fact that Class Counsel will continue to render service to the Class after the approval by monitoring the distribution of the settlement fund to the Class Members, reporting on the distribution, and fielding inquiries about the class action and settlement for months to come.  See Friedman Decl., ¶ 58, p. 25, lines 11 to 16 & ¶ 59, p. 25, lines 17-21.  Fifth, the absence of any objection to the requested attorneys' fees, costs, and Class Representative enhancements indicates class-wide approval.  See Friedman Decl., ¶ 60, p. 25, lines 22 to 26; Zarate Decl., ¶ 12, p. 4, line 3 to ¶ 14, p. 4, line 6.

## II.    FACTUAL AND PROCEDURAL HISTORY.

This is not a case in which Class Counsel and the Class Representatives merely filed a lawsuit, engaged in minimal discovery, and then reached an agreement to resolve the matter.  See Friedman Decl., ¶ 4, p. 1, lines 21 to 26.  To the contrary and as explained below and in the accompanying Friedman Declaration, when their initial efforts to minimize fees and costs failed to result in settlement discussions, Class Counsel and the original Class Representatives engaged in protracted and heavily contested litigation for more than 2 years.  Id.

### A.    Plaintiffs and Their Counsel Conducted Extensive Investigation And Legal and Factual Analysis Before Filing The Litigation.

Prior to the initiation of the litigation, original plaintiffs Lodge and Lertzman spent a significant amount of time extensively meeting and conferring with their counsel, gathering and organizing documentation for their counsel to review, and

2

locating witnesses for their counsel to interview.  See Friedman Decl., ¶ 5, p. 1, line 27 to p. 2, line 10.  Likewise, Plaintiffs' counsel spent a significant amount of time reviewing Plaintiffs' documentation and factual allegations, interviewing witnesses, and conducting legal research into their claims.  Id. Together, Plaintiffs and their counsel then jointly spent a considerable amount of time preparing and finalizing Plaintiffs' original class action Complaint. Id.

Plaintiffs filed their original class action Complaint in the Los Angeles County Superior Court on July 3, 2007.  See Friedman Decl., ¶ 5, p. 2, line 10 to 13.  Plaintiffs then filed a First Amended Complaint on August 3, 2007.  Soon thereafter, Defendants removed the case. Id.

In the First Amended Complaint, Plaintiffs sought damages on the basis of their allegations that, inter alia, Defendants took unlawful deductions from their commissions and failed to reimburse them for expenses they incurred in violation of the Labor Code and violated Business & Professions Code §17200.  See Friedman Decl., ¶ 5, p. 2, line 13 to 18.

**B.    <u>Plaintiffs Tried To Settle Their Claims At The Beginning Of The Litigation, Before Incurring Significant Attorneys' Fees and Costs</u>.**

Counsel for Plaintiffs initially attempted to resolve the litigation at the inception of the case by suggesting, in their very first communications with opposing counsel and then again at the parties' Rule 26 meeting, that the parties discuss settlement and/or participate in an early mediation.  See Friedman Decl., ¶ 6, p. 2, lines 19-26.  Counsel for Plaintiffs explained that an early settlement would minimize the attorneys' fees and costs that would otherwise be incurred by the parties in litigating the case.  Id.  Counsel for Defendants stated that Defendants would not entertain settlement discussion until Plaintiffs successfully moved for class certification. Id.

\\\

**C.**   **After Defendants Refused To Discuss An Early Settlement, the Parties Actively Litigated the Case and Engaged in Substantial Discovery and Law and Motion Practice.**

The Parties have conducted a significant amount of law and motion practice in this case, including litigation over a motion to dismiss [ECF#8], a motion to strike [ECF#11], a motion for a protective order [ECF#35], and multiple discovery motions [ECF##45, 52, 58, 87, 100, and 102].  See also Friedman Decl., ¶ 7, p. 2, line 27 – p. 4, line 3.  The Parties have also conducted a significant amount of investigation and discovery into the facts and law during the prosecution of the litigation.  Id.  Such discovery and investigation includes: the propounding of extensive written discovery by counsel for both Plaintiffs and Defendants; the production of thousands of documents (in both hardcopy and electronic form) by Plaintiffs Lodge and Lertzman; numerous lengthy and time-consuming in-person and telephonic meet and confer conferences regarding inadequate discovery responses; the taking of the depositions of Plaintiffs Lodge and Lertzman; the taking of the depositions of four of Defendants' FRCP Rule 30(b)(1) "Persons Most Qualifed" to testify to a variety of subject matters and the deposition of one of Defendants' supervisors; the development, revision and then mailing of a detailed questionnaire by Class Counsel to the entire Class; the review and analysis by Class Counsel and Defense Counsel of the responses to the questionnaires; the interviewing of approximately fifty putative Class Members by Class Counsel; the preparation of and revisions to approximately fifty putative Class Member declarations; the production by Defendants of tens of thousands of pages of documents (in both hardcopy and electronic form) and detailed information relevant to Plaintiffs' claims.  Id.  Such discovery and investigation also includes additional information that was disclosed in the course of the parties' full day mediation and numerous subsequent in-person and telephonic settlement conferences between counsel for the Parties.  Id.  Among other things, counsel for

4

the Parties have investigated the law as applied to the facts discovered regarding the alleged claims of Plaintiffs and the Class and the potential defenses thereto.  Id.

**D.    The Parties Engaged In Serious, Informed, and Arm's Length Settlement Negotiations.**

After a year and a half of litigation and law and motion practice, the Parties attended a full day of mediation that lasted well into the evening before an experienced and well-regarded mediator, Ms. Susan Haldeman of the San Francisco-based Gregorio, Haldeman, Piazza, Rotman, Frank & Feder mediation firm, on January 15, 2009.  See Friedman Decl., ¶ 8, p. 4, line 4 – 12.  During the meeting, counsel for the Parties, through the facilitative help of the mediator, engaged in extensive discussions about the strengths and weaknesses of the claims and defenses and damages evaluation. Id.  The mediation wasn't successful. Id.

When the mediation did not culminate in a settlement, Plaintiffs filed a motion to amend the Scheduling Order so that two additional class representatives could be added, out of an abundance of caution, to counter Defendants' argument that the original Class Representatives, Lodge and Lertzman, were unable to satisfy Rule 23(a)'s "typicality" requirement. [ECF#113]  See also Friedman Decl., ¶ 9, p. 4, lines 13 - 17.  On February 11, 2009, the Court granted Plaintiffs' motion [ECF#119] and Plaintiffs filed a Second Amended Complaint adding Barbara Galaro and Michael Hopkins as additional Plaintiffs/Class Representatives [ECF#120].   See Friedman Decl., ¶ 10, p. 4, lines 18 - 20.

With the filing of the Second Amended Complaint, settlement discussions resumed with the continued help of Ms. Haldeman.  See Friedman Decl., ¶ 11, p. 4, lines 21 - 24.  Ultimately, with the efforts of all parties, as well as the invaluable assistance of the mediator, the parties reached a proposed settlement.  Id.

**E.    The Claims Administration Process.**

In accordance with the Court's Order granting preliminary approval [ECF Document # 138], Defendant provided a list of Class Members to the designated

Claims Administrator, CPT Group, Inc., and on September 23, 2009, the Claims Administrator mailed Notices to 739 Class Members on the list.  See Zarate Decl., ¶ 3, p. 2, line 10 to ¶ 10, p. 3, line 25.  Similarly, Class Counsel posted information regarding the settlement on the home page of their website [see www.helmerfriedman.com] as well as on a page on their website devoted to the litigation [see http://www.helmerfriedman.com/Lawsuits/US%20 Remodeler%20Class%20Action.htm].  See Friedman Decl., ¶ 69, p 28, lines 6-14.  In addition, Class Counsel contacted the approximately 50 members of the class who had previously contacted the law firm and requested that they be provided periodic updates about the litigation and provided them with information about the proposed settlement.  Id.

In response, 237 Class Members submitted valid Claim Forms, representing 32.07 percent of all Class Members.  See Zarate Decl., ¶ 11, p. 3, lines 26-28.  Not a single Exclusion Form was submitted.  Similarly, not a single Class Member submitted an objection.  Zarate Decl., ¶ 12, p. 4, line 3 to ¶ 14, p. 4, line 6.

## III.   THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES.

Courts in the Ninth Circuit have the discretion to choose one of two methods by which to calculate attorneys' fees requested in connection with class action settlement attorneys' fees requests -- (i) the lodestar method; or (ii) the percentage-of-recovery method.  See Fischel v. Equitable Life Assusr. Soc'y, 307 F.3d 997, 1006 (9th Cir. 2002); Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002); In re Washington Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1296 (9th Cir. 1994) ("WPPSS").  See also 4 A. Conte & H. Newberg, *Newberg On Class Actions* § 14:5 (4th ed. 2002)("'The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved.  For these reasons, it is necessary that district courts

be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them.") quoting Rawlings v. Prudential-Bache Properties, Inc., 9 F.3d 513 (6th Cir. 1993); D. Herr, *Annotated Manual for Complex Litigation* § 14.122, p. 254 (4th ed.2008)("Judges award attorneys fees in some common-fund cases based on the loadstar").

"(W)hen determining attorneys' fees, the district court should be guided by the fundamental principle that fee awards . . . be reasonable under the circumstances." WPPSS, 19 F.3d at 1295.   This often means that in civil rights and employment cases (including wage and hour claims) where statutory attorneys' fees are available, the loadstar method should be utilized because it more fairly compensates attorneys who take on cases with relatively small total dollar values. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998)("This court has affirmed the use of two separate methods for determining attorneys fees, depending on the case. In 'common-fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method . . . In employment, civil rights and other injunctive relief class actions, courts often use a lodestar calculation . . ."); Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) (suggesting that where, as in this case, an award of attorneys' fees cases is expressly authorized by statute that the 25% benchmark percentage for common fund cases should be replaced by a lodestar calculation when the percentage recovery would be too small in light of the hours devoted to the case).

Under the lodestar approach, the Court "must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008). See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478

U.S. 546, 565 (1986); <u>Friend v. Kolodzieckzak</u>, 72 F.3d 1386 (9th Cir. 1995); D. Herr, *Annotated Manual for Complex Litigation* § 14.122, p. 254-55 (4th ed.2008)("The loadstar calculation begins with multiplying the number of hours reasonably expended by a reasonable hourly rate.").

Once the lodestar is calculated, courts routinely enhance the lodestar with a "multiplier" to compensate attorneys for, *inter alia*, (1) the time and labor involved, (2) the difficulty and novelty of the issues, (3) the necessary legal skill required, (4) the preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) the contingent nature of the fee, (7) the time limitations imposed by circumstances or the client, (8) the amount in controversy and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  <u>See</u> <u>Van Vranken v. Atlantic Richfield Co.</u>, 901 F. Supp. 294, 298 (N.D. Cal. 1995) <u>citing</u> <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975), <u>cert</u>. <u>denied</u>, 425 U.S. 951 (1976); <u>Ferland v. Conrad Credit Corp.</u>, 244 F.3d 1145, 1149 n. 4 (9th Cir. 2001).  <u>See</u> <u>also</u> <u>Cudle v. Bristow Optical Co.</u>, 224 F.3d 1014, 1029 (9th Cir. 2000); D. Herr, *Annotated Manual for Complex Litigation* § 14.122, p. 256 (4th ed.2008)("The loadstar figure may be adjusted, either upward or downward, to account for several factors including, inter alia, the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, the risk on nonpayment, and any delay in payment."); 4 A. Conte & H. Newberg, *Newberg On Class Actions* § 14:5 (4th ed. 2002)("courts could increase or decrease the loadstar according to a number of factors, including the risk of loss and the quality of the attorneys' work").  The Ninth Circuit has, in fact, specifically noted that a multiplier based on the risk of contingency is appropriate to "reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." <u>WPPSS</u>, 19 F.3d. at 1299

1  (reversing a fee award because a multiplier was not applied).

2       Here, as explained below, all of the foregoing factors support an award of

3  the requested attorneys' fees in the amount of $720,287.14.

4       **A.    The Requested Fee Are Reasonable Because They Are *Less Than***

5            **Class Counsel's Hourly Lodestar.**

6       Class counsel's lodestar is $1,146,484.00.  <u>See</u> Friedman Decl., ¶ 17, p. 5,

7  line 23 to p. 6, line 4.  As outlined below, this figure is based on the time

8  reasonably expended by class counsel multiplied by their hourly rates:[1]

| Attorney | Attorneys' Hours & Hourly Rate | Attorneys' Fees |
|---|---|---|
| Andrew Friedman | 1,065.8 hours at $550.00 an hour | $586,619.00 |
| Gregory Helmer | 336 hours at $550.00 an hour | $184,800.00 |
| Sam Deskin | 32.6 hours at $500.00 an hour | $16,300.00 |
| Kenneth Helmer | 164.6 hours at $450.00 an hour | $74,070.00 |
| Melanie Partow | 642 hours at $400.00 an hour | $256,800.00 |
| Teresa Straley | 79.7 hours at $350.00 an hour | $27,895.00 |
| | | $1,146,484.00 |

<u>Id</u>.

     Because Class Counsel's requested fee of $720,287.14 is considerably less

than Class Counsel's loadstar, Class Counsel's fee request is reasonable and the

Court should approve it.

     **1.    The Total Number Of Hours Worked Is Reasonable.**

     The work performed by Andrew H. Friedman, Gregory D. Helmer, Sam

Deskin, Teresa Straley, Ken Helmer and Melanie Partow is described in the

Declaration of Andrew H. Friedman.  <u>See</u> Friedman Decl., ¶ 18, p. 6, line 9 – p. 7,

line 19.  Given the difficult legal and factual issues raised in the litigation as

evidenced by the extensive discovery and law and motion work, the complexity of

---

[1] This calculation is based on Class Counsel's expenditure of time through early November 2009 and does not include all of the hours expended on the motion for final approval of the settlement or any of the work that will have to be performed post-final approval.  <u>See</u> Friedman Decl., ¶ 15, p. 5, lines 14-17.

1   the issues raised in the litigation of this matter, and the sheer amount of time

2   during which the case was litigated (more than 2 years), the total time expended

3   was very reasonable.  <u>See</u> Friedman Decl., ¶ 18, p. 7, lines 15 - 20. Class Counsel

4   maintained detailed contemporaneously entered time records throughout this

5   litigation and, if the Court so wishes, Class Counsel will provide their time records

6   for an *in camera* review.  <u>See</u> Friedman Decl., ¶ 19, p. 7, lines 20 - 23.

<b>2.    <u>The Hourly Rates Claimed Are Reasonable.</u></b>

7

8       In order to determine whether an attorney's claimed hourly rate is

9   reasonable, the Court should consider the "geographic area and the attorney's

10  experience, reputation, practice, qualifications, and customary charge.  The rate

11  should reflect what the attorney would normally command in the relevant market

12  place."  D. Herr, *Annotated Manual for Complex Litigation* § 14.122, p. 255 (4th

13  ed.2008).  <u>See</u> <u>also</u> <u>Chalmers v. City of Los Angeles</u>, 796 F.2d 1205, 1210 (9th

14  Cir.1986)(in determining reasonableness of hourly rate, courts look to the

15  prevailing market rates in the relevant community for "similar work performed by

16  attorneys of comparable skill, experience, and reputation.").

17      As indicated above, the hourly rates requested for Class Counsel in this

18  action are as follows: Andrew H. Friedman at $550.00 per hour, Gregory D.

19  Helmer at $550.00 per hour, Sam Deskin at $500.00 an hour, Kenneth Helmer at

20  $450.00 an hour, Melanie Partow at $400.00 an hour, and Teresa Straley $350.00

21  an hour.  <u>See</u> Friedman Decl., ¶ 17, p. 5, line 23 to p. 6, line 4.  The backgrounds of

22  these attorneys and the reasonableness of their hourly fees are set forth in the

23  Declaration of Andrew H. Friedman and the declarations of multiple prominent

24  Southern California plaintiff *and* defense employment attorneys (including, among

25  others, Michelle A. Reinglass of the Law Offices of Michelle A. Reinglass,

26  Anthony J. Oncidi of Proskauer Rose LLP, Wilmer Harris of Schonbrun DeSimone

27  Seplow Harris & Hoffman, Jon D. Meer of Seyfarth Shaw LLP, Lisa A. Maki of

28  the Law Offices of Lisa A. Maki, and Sheldon Eisenberg of Eisenberg Raizman

10

Thurston & Wong LLP) attached thereto which demonstrate that these hourly rates are well within the range for comparable attorneys of their skill and experience. <u>See</u> Friedman Decl., ¶ 20, p. 7, line 24 to ¶ 49, p. 19, line 20.

> **B.**    **<u>The Requested Fees Are Reasonable Because They Are Significantly Less Than Class Counsel's Hourly Lodestar Plus Multiplier</u>.**

For the reasons explained below, Class Counsel believes that a multiplier of between 1.5 and 2.5 would be appropriate in this case. [2]  <u>See</u> Friedman Decl., ¶ 50, p. 19, line 23 to ¶ 51, p. 19, line 13 to p. 21, line 1.  Hence, Class counsel's lodestar *plus* multiplier is between $1,719,726.00 and $2,866,210.00.  <u>Id</u>.  Because Class Counsel's $720,287.14 fee request is significantly less than Class Counsel's loadstar plus multiplier, Class Counsel's fee request is reasonable and the Court should approve it.  <u>Id</u>.

> **1.**    **<u>The Time And Labor Involved In Litigating This Case Was Extensive And Meant That Class Counsel Was Precluded From Other Employment</u>.**

As indicated above and as explained in the Friedman Declaration, Class Counsel worked on this case for over two years and spent more than 2,320 hours of attorney time.  <u>See</u> Friedman Decl., ¶ 17, p. 5, line 23 to p. 6, line 4.  As a result of this case, Class Counsel needed to retain two additional attorneys.  <u>See</u> Friedman Decl., ¶ 16, p. 5, lines 18 to 22 & ¶ 57, p. 25, lines 3 to 8.  Additionally, the time and labor required on this case precluded class counsel from taking on other matters.  <u>Id</u>.

\\\

\\\

---

[2] A multiplier of between 1.5. and 2.5 falls well within the range typically awarded.  <u>See In re Prudential Ins. Co.</u>, 148 F.3d 283, 341 (3d Cir.1998) (recognizing that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied") <u>quoting</u> 3 Newberg § 14.03 at 14-5.

2.    **The Issues In This Case Were Novel And Meant That Class Counsel Took A Significant Risk In Litigating It Because They Were Doing So On A Contingency.**

Class Counsel took this case on a contingency and advanced all of the litigation costs. See Friedman Decl., ¶ 57, p. 25, lines 3 to 8. Hence, Class Counsel took a significant risk litigating this case because it had to expend significant amounts of time and incur substantial expenses with no guaranty of recovery. Id. This risk was compounded by the novel legal issues presented in this case which included Defendants' argument that outside salespersons are exempt from the protections of those California Labor Code Sections under which Plaintiffs were suing. See Friedman Decl., ¶ 55, p. 22, lines 16 to 20.

3.    **The Experience, Reputation, And Ability Of Class Counsel Militate In Favor Of A Multiplier.**

This Action has been litigated by experienced and competent counsel who performed extremely high quality work on behalf of the Class. As fully detailed in the accompanying Friedman Declaration, Class Counsel's efforts included, but were not limited to: (i) investigating Plaintiffs' claims (including interviewing witnesses, reviewing documents, and conducting legal research) and drafting the complaints; (ii) drafting, responding to and conducting both merits and class discovery, which included analyzing tens of thousands of pages of documents, and defending and taking multiple depositions; (iii) bringing and opposing multiple discovery motions; (iv) drafting numerous memoranda of law concerning various issues presented throughout the litigation; (vii) making numerous oral arguments before the District Court; and (vii) negotiating the settlement, which involved conducting a mediation and then engaging in follow-up negotiations (via in-person meetings, telephone conferences, and e-mail) that spanned several months. See Friedman Decl., ¶ 4, p. 1, line 21 to ¶ 12, p. 4, line 26. Moreover, throughout the litigation of this matter, Class Counsel prevailed on nearly every single motion

12

heard before the Court.  See Friedman Decl., ¶ 58, p. 25, lines 11 - 16.  Hence, on the basis of the record in this litigation, it is clear that Class Counsel is highly skilled in the prosecution of class action litigation and performed very high quality work on behalf of the Class in this Action.

## C.    The Requested Fees Are Reasonable Given The Substantial Benefits Conferred On The Class.

Courts have consistently recognized that the result achieved is an important factor to be considered in making a fee award.  See Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)("(t)he most critical factor is the degree of success obtained.").  Here, the Settlement confers substantial benefits on Class Members. Indeed, the Settlement ensures that all members of the Commission Subclass who submit a Claim Form will receive approximately 57% of the total disputed amount that Plaintiffs believe Defendants unlawfully deducted from their commissions.  See Friedman Decl., ¶ 53, p. 21, lines 11 - 24.  This is an excellent result. [3]  Id.  Indeed, in In re Immune Response Securities Litigation, 497 F.Supp.2d 1166 (S.D. Cal. 2007), the court found that class counsel achieved a "favorable recovery" for the class were they obtained a settlement resulting in the payment of 12% of the maximum provable damages assuming complete success.  Id. at 1175.  Likewise, the court in In re Omnivision Technologies, Inc., 559 F.Supp.2d 1036 (N.D. Cal. 2008), found that a recovery of 9% of possible damages was a "substantial achievement on behalf of the class."  Id. at 1046.    In stark contrast to both of these

---

[3] As to the Expenses Subclass, counsel for the parties were not able to determine a total maximum potential exposure as the types of expenses and amounts of expenses incurred by the Class Members varied dramatically.  See Friedman Decl., ¶ 54, p. 21, line 25 to p. 22, line 12.  For example, some Class Members indicated that they did not incur any expenses, other Class Members indicated that they incurred tens or hundreds of dollars in expenses, and still other Class Members claimed to have incurred several thousands of dollars in expenses.  Id. In addition, the bulk of the expenses were for the purchase of items from which the Expense Subclass could derive significant personal use (i.e., cell phone, computer, fax machine).  Accordingly, given the concerns Class Counsel had with certification and damages prove-up, the $141,000 payment to the Expenses Subclass represents substantial relief.  Id.

1   cases, here, Class Counsel has achieved a clearly superior recovery for the Class

2   that will ultimately provide for Class members to receive 57% of the amount that

3   Plaintiffs' believe constituted unlawful commission deductions.  Furthermore, as

4   discussed herein, unlike the classes in <u>Immune Response</u> and <u>OmniVision</u>, <u>supra</u>,

5   the Class is <u>not</u> losing any percentage of their recovery to attorneys' fees, costs,

6   incentive awards, or class administration expenses because Defendants agreed to

7   pay those figures in addition to the sums that will go the Commission and Expense

8   Subclass members who submit claims.

9        Accordingly, based on the excellent result that Class Counsel has achieved

10   for the Class, the Court should approve Plaintiffs' request for an award of

11   $720,287.14 in attorneys' fees.

12        **D.    <u>The Reaction Of The Plaintiffs And The Class Supports The Fees</u>**

13             **<u>Request</u>.**

14        The reaction of the Plaintiffs and the Class uniformly support the attorneys'

15   fee award sought by Class Counsel.  <u>See</u> Friedman Decl., ¶ 60, p. 25, lines 22 - 26.

16   Each of the four Plaintiffs, who are familiar with the facts and circumstances of

17   both the litigation and the Settlement, favor the fee award sought by Class Counsel.

18   <u>See</u> Stipulation and Settlement Agreement attached to Friedman Declaration as

19   Exh. "A." <u>See also</u> Friedman Decl., ¶ 60, p. 25, lines 22 - 26.  In addition, a

20   testament to the strength of the Settlement and the overwhelming support that the

21   Class has shown for it is the fact that not a single member of the Class filed an

22   objection to either the settlement or the amount of attorneys' fees sought by Class

23   Counsel.  <u>See</u> Zarate Decl., ¶ 12, p. 4, line 3 to ¶ 14, p. 4, line 6.  Similarly, not a

24   single member of the Class opted out of the Settlement. <u>Id</u>.

25        The Third Circuit has noted that a low level of objections, much less the zero

26   objections made in this case, is a "rare phenomenon." <u>In re Rite Aid Corp. Sec.</u>

27   <u>Litig.</u>, 396 F.3d 294,305 (3d Cir. 2005).  Moreover, as the Ninth Circuit has held,

28   not even a small number of objections should not stand in the way of approval of a

1   reasonable fee. See In re Mego Fin. Corp. Sec. Litig., 213 F. 3d 454, 459 (9th Cir.

2   2000).  Here, the fact that not a single member of the Class objected to the

3   Settlement provides ample evidence of the strength of the Settlement, the

4   reasonableness of the requested attorneys' fees, and the fact that Class Counsel are

5   deserving of the requested attorneys' fees award.

6       **E.    The Requested Attorneys' Fees Will Not Reduce Any Class**

7           **Member's Recovery.**

8       Typically, the attorneys' fees award is taken from a common fund *before* any

9   claims are paid to class members, thereby reducing the amount available to the

10  Class.  In this case, however, Defendants have agreed to pay the requested

11  attorneys' fees in addition to all of the monies that Defendants will ultimately pay

12  to the Class. As a result, the award and payment of attorneys' fees to Class Counsel

13  will not reduce the amount paid to the Class.  Similarly, any reduction in the

14  amount of attorneys' fees requested by Class Counsel will not result in an increase

15  in the amount paid to the Class. Such an arrangement further supports approval of

16  the attorneys' fees. See generally, Lobatz v. Us. West Cellular of Calif, Inc., 222

17  F3d 1142, 1144, 1149-50 (9th Cir 2000); Zucker v. Occidental Petroleum Corp.,

18  192 F.3d 1323, 1325, 1328-29 (9th Cir. 1999), cert. denied, 529 U.S. 1066 (2000).

19

20  **III.    THE COURT SHOULD APPROVE THE REQUESTED COSTS.**

21      Typically, class counsel is entitled to reimbursement of all reasonable out-of-

22  pocket expenses in prosecution of claims and in obtaining settlement. See Vincent

23  v. Hughes Air West, 557 F.2d 759, 769 (9th Cir. 1977).  Here, Plaintiffs further

24  requests that, in addition to the reasonable attorneys' fees, the Court approve

25  reimbursement of $29,712.86 in expenses incurred by Class Counsel in connection

26  with this Action. See Friedman Decl., ¶ 60, p. 26, line 2 to ¶ 63, p. 26, line 10.  The

27  expenses incurred are itemized in the chart which is Exhibit "K" to the Friedman

28  Declaration. Id.  All of these expenses were reasonably incurred in the prosecution

of this case. <u>Id</u>.  Moreover, because Defendants have also agreed to pay such expenses *in addition to* the monies that will go to the class, the payment of these expenses will not diminish the amount paid to Class members in any way.  <u>Id</u>.  Nor would a reduction in the amount of requested costs result in an increase to the amount paid to the class.  <u>Id</u>.

## IV.    <u>THE COURT SHOULD APPROVE THE REQUESTED CLASS REPRESENTATIVE INCENTIVE PAYMENTS.</u>

The Plaintiffs and Class Counsel request, and Defendants do not to oppose, payments of twenty thousand dollars ($20,000) each for Lertzman and Lodge and two thousand five hundred dollars ($2,500) each for Galaro and Hopkins as enhancement payments in recognition of their service to, and efforts on behalf of, the Class.  <u>See</u> Friedman Decl., ¶ 64, p. 26, line 12 to ¶ 68, p. 28, line 5.  These incentive awards are in addition to the relief they will be entitled to under the terms of the Settlement.  <u>See</u> Settlement Agreement, pp. 26-27, 30-31.

Courts have discretion to award a class representative a reasonable incentive payment.  <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 977 (9th Cir. 2003).  <u>See</u> <u>also</u> Manual for Complex Litig. § 21.62 n. 971 (4th ed. 2004) (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery").

In determining whether to approve an incentive award, courts consider "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulty encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." <u>Van Vraken v.</u> <u>Atlantic Richfeld Co.</u>, 901 F. Supp. 294, 299 (N.D. Cal. 1995); <u>see also</u> <u>Wright v.</u> <u>Linkus Enterprises, Inc.</u>, --- F.R.D. ----, 2009 WL 2365436, * 9 (E.D.Cal. 2009)

16

1  (holding that in determining "the propriety of incentive awards to named plaintiffs,
2  a district court should consider the actions protecting class interests, the benefit
3  provided to the class based on those actions, and the amount of time and effort
4  expended by the plaintiff.").

### 1. The Class Representatives Faced Risk (Financial and Otherwise) In Commencing Suit.

7  By participating in this litigation as named plaintiffs, Plaintiffs subjected
8  themselves to the risk that they could be liable for Defendants' attorneys' fees and
9  costs should Defendants prevail.  See Defendant's Answer To First Amended
10 Complaint (ECF#24), p. 15, lines 25 – 27 (seeking attorneys' fees and costs);
11 Defendant's Answer To Second Amended Complaint (ECF#121), p. 17, lines 5 – 7
12 (same).  In addition, by participating in this litigation, Plaintiffs were subject to the
13 risk that they would be retaliated against by future employers who might not want
14 to hire individuals perceived as being litigious.  Plaintiffs accepted these risks for
15 the benefit of the class. See Friedman Decl., ¶ 65, p. 26, lines 19 - 27.

### 2. The Class Representatives Faced Personal Difficulties and Spent Significant Time And Effort Over The Course Of More Than Two Years As A Result Of This Litigation.

19 Prior to and then throughout the litigation, the original Class Representatives
20 (Lertzman and Lodge) spent a significant amount of time helping Class Counsel
21 prosecute this Litigation.  See Friedman Decl., ¶ 66, p. 27, line 2 to ¶ 67, p. 27, line
22 25 to p. 28, line 1.   In addition to meeting and conferring with Class Counsel (both
23 telephonically, by e-mail, and in-person on numerous occasions) and providing
24 Class Counsel with access to important documents and witnesses before the filing
25 of the litigation, they have participated in discovery, including extensive deposition
26 preparation sessions during the workweek (both during normal business hours and
27 at night after normal business hours) and on weekends, they endured probing
28 depositions, they responded to numerous interrogatories and requests for

production of documents, they helped Class Counsel to review documents produced by Defendants, and they helped to prepare Class Counsel for the depositions of Defendants' persons most knowledgeable.  Id.  They also attended and participated in the mediation, were kept informed of the litigation and settlement negotiations as it developed, and they were kept abreast of, and approved, the proposed Settlement Agreement.  Id.  This level of commitment for more than two years obviously demanded a significant amount of personal time from Lodge and Lertzman.  Id.  Indeed, on several occasions Lertzman traveled from his residence in Arizona to Los Angeles and Lodge missed work due to the case. Id.  Class Counsel estimates that the Lodge and Lertzman spent each spent hundreds of hours working on this case.  Id.

The new Class Representatives (Galaro and Hopkins) agreed to enter the case at an important moment during settlement discussions and their presence helped the parties reach the proposed settlement.  See Friedman Decl., ¶ 68, p. 28, lines 2 - 5.  Likewise, they were also kept abreast of, and approved, the proposed Settlement Agreement.  Id.

### 3.    The Class Representatives Will Not Receive Much Personal Benefit As A Result Of The Litigation.

The Class representatives have expended time and effort representing the interests of the class.  Fundamental fairness dictates that they should receive some compensation above and beyond their individual recoveries as class members. Accordingly, because enhancements serve as premiums, in addition to any claims-based recovery from the settlement, and promote the public policy of encouraging individuals to serve as class plaintiffs in representative lawsuits, the requested enhancements are fair and reasonable.

\\\
\\\
\\\

## VI.    <u>CONCLUSION</u>.

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court grants their request for reasonable attorneys' fees in the amount of $720,287.14, costs in the amount of $29,712.86, and Class Representative Enhancements in the amount of $20,000.00 each for Kenneth John Lodge and Judson Lertzman and $2,500.00 each for Barbara Galaro and Michael Hopkins.

Date: November 16, 2009              HELMER • FRIEDMAN, LLP

                                     /s/ *Andrew H. Friedman*
                                     _____
                                     ANDREW H. FRIEDMAN, P.C.
                                     ATTORNEYS FOR PLAINTIFFS KENNETH
                                     JOHN LODGE, JUDSON LERTZMAN, BARBARA
                                     GALARO AND MICHAEL HOPKINS AND THE
                                     PROPOSED CLASSES